**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**IN ADMIRALTY**

**NORTHERN INSURANCE COMPANY OF
NEW YORK, as subrogee of
CHARMER CORP., a foreign corporation,**

**Plaintiff,**

**v.**                                                     **Case No.: 3:05cv184/MCR/MD**

**PELICAN POINT HARBOR, INC.,
HARBOR WALK, INC., and
EAST PASS INVESTORS, INC.,**

**Defendants.**
_____/

**O R D E R**

Northern Insurance Company of New York ("plaintiff"), as subrogee of the Charmer

Corporation, brings this action invoking the court's jurisdiction pursuant to 28 U.S.C.

§ 1333, Fed.R.Civ.P. 9(h), and 28 U.S.C. § 1332 against Pelican Point Harbor, Inc., Harbor

Walk, Inc., and East Pass Investors, Inc. (together, "defendants").  The case is presently

before the court on defendants' motion for summary judgment (doc. 31, statement of facts

at doc. 32), to which plaintiff has responded in opposition (docs. 38-43, 52).[1]  For the

reasons that follow, the court grants defendants' motion in part and denies it in part.

**BACKGROUND**

There is no dispute as to the following facts.  In September 2004 plaintiff's insured,

the Charmer Corporation, owned the M/V Charmer ("the Charmer"), a 1989 seventy foot

Inace motor yacht. Frank Terrell ("Terrell") was the sole stockholder of the Charmer

---

[1] At the court's direction the parties also filed supplemental briefs on the issues of subject matter
jurisdiction and the substantive law applicable to plaintiff's claims.  (Docs. 63-66).

Corporation.  At all times relevant to this dispute plaintiff provided hull insurance on the Charmer to the corporation in the amount of $740,000.[2] In September 2004 the Charmer was docked at Harbor Walk Marina in Destin, Florida, pursuant to a dock license agreement between defendants and Terrell for the rental of a boat slip.  Paragraph P of Exhibit B of the dock license requires removal of all vessels from the marina at the time of or before the issuance of hurricane warnings for the area.  This section of the dock license conflicts with Fla. Stat. § 327.59.[3]

On September 13, 2004, at 10:00 p.m., CDT, the National Hurricane Center first issued a hurricane watch for Hurricane Ivan for the Destin, Florida, area, specifically the U.S. gulf coast extending from Morgan City, Louisiana, eastward to St. Marks, Florida. Some time prior to noon on September 14, 2004, defendants contacted Terrell through his office in Georgia regarding the removal of the Charmer from the marina due to the approaching hurricane.  Terrell, with the assistance of two other men, Ralph Dacus ("Dacus") and Robert McAfee ("McAfee"), took the Charmer from the marina and anchored the vessel in Destin harbor on September 15, 2004.  In the early morning hours of September 16, 2004, Hurricane Ivan made landfall along the Alabama/Florida coast, affecting the Destin, Florida, area.  After the storm Terrell located the Charmer, which had drifted from its anchorage in Destin harbor into Chocktawhatchee Bay and was aground near Shalimar, Florida.  The Charmer was severely damaged.  Upon Terrell's filing an insurance claim with plaintiff for the damage to the Charmer, on or about September 20 plaintiff sent an adjuster to inspect the vessel.  After the inspection plaintiff declared the

---

[2] Plaintiff states that the Charmer's hull identification number is ISNMUL02F989 and that insurance was provided by Master Mariner Yacht Policy No. YR 95856911, effective dates October 19, 2003, to October 19, 2004.

[3] In its entirety, Fla. Stat. § 327.59 , Marina evacuations, provides:
(1) After June 1, 1994, marinas may not adopt, maintain, or enforce policies pertaining to evacuation of vessels which require vessels to be removed from marinas following the issuance of a hurricane watch or warning, in order to ensure that protecting the lives and safety of vessel owners is placed before interests of protecting property.
(2) Nothing in this section may be construed to restrict the ability of an owner of a vessel or the owner's authorized representative to remove a vessel voluntarily from a marina at any time or to restrict a marina owner from dictating the kind of cleats, ropes, fenders, and other measures that must be used on vessels as a condition of use of a marina.
Fla. Stat. § 327.59.

vessel a constructive total loss and paid the Charmer Corporation $655,000.  Plaintiff's insured may face third party claims for damage allegedly caused by the vessel during the storm but none has yet been brought.

In its complaint (doc. 1), plaintiff asserts two claims: (1) breach of contract, based on defendants' demand that Terrell remove the Charmer from its boat slip as Hurricane Ivan approached, which resulted in the constructive total loss of the vessel and plaintiff's paying its insured $655,000; and (2) negligence per se due to the violation of § 327.59. Plaintiff seeks as relief damages in the amount of $655,000; interest; costs; and attorneys' fees.   In their motion for summary judgment defendants assert that plaintiff's breach of contract claim fails because the damage sustained by the Charmer was not caused by defendants' actions but rather "occurred as a result of the owner's inadequate mooring of the vessel or Hurricane Ivan, an 'Act of God,' or both."  (Doc. 31 at 4).  In addition, defendants argue that plaintiff's negligence per se claim should be dismissed because § 327.59 "provides no private right of action and the damages sustained by plaintiff are not of the type the statute seeks to prevent."  (Id.).   Plaintiff responds that genuine issues of material fact exist as to both claims, thus precluding summary judgment, although it concedes that the issue of whether § 327.59 gives a right to pursue a private cause of action is ripe for summary adjudication.  (Doc. 40).

**SUMMARY JUDGMENT STANDARD**

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A factual dispute is "`genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law."  Anderson, 477 U.S. at 248; Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the

nonmoving party's favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B & B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citation omitted).   Nevertheless, a general denial unaccompanied by any evidentiary support will not suffice. See, e.g., Courson v. McMillian, 939 F.2d 1479 (11th Cir. 1991); Hutton v. Strickland, 919 F.2d 1531 (11th Cir. 1991). Furthermore, the court is not obliged to deny summary judgment for the moving party when the evidence favoring the nonmoving party is merely colorable or is not significantly probative. See Anderson, 477 U.S. at 249. Indeed, the existence of a scintilla of evidence in support of the nonmovant's position is insufficient; the test is "whether there is [evidence] upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 252.  The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. See Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). Once the movant satisfies its burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the nonmovant to "come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., 475 U.S. at 587 (emphasis omitted). Otherwise stated, the nonmovant must "demonstrate that there is indeed a material issue of fact that precludes summary  judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).

**DISCUSSION**

Jurisdiction and Applicable Substantive Law

Article III of the U.S. Constitution generally requires a federal court to determine that it possesses subject matter jurisdiction before proceeding to consider a claim's merits.[4] See Ruhrgas A.G. v. Marathon Oil Company, 526 U.S. 574, 583, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999).  As explained, the court is satisfied that jurisdiction to hear plaintiff's

---

[4]  Even when, as in this case, there is no dispute by the parties with respect to jurisdiction, courts "have an independent duty to ensure admiralty jurisdiction exists before applying admiralty law."  Doe v. Celebrity Cruises, Inc., 394 F.3d 891, 899 (11th Cir. 2004) (citations omitted).

breach of contract and negligence per se claims is conferred pursuant to 28 U.S.C. § 1333 (admiralty) and 28 U.S.C. § 1332 (diversity).[5]

Diversity jurisdiction exists where the suit is between citizens of different states, and the amount in controversy exceeds $75,000.  See 28 U.S.C. § 1332.  For purposes of § 1332, a corporation is a citizen of any state by which it has been incorporated and of the state where it has its principal place of business.  See 28 U.S.C. § 1332(c)(1).  In this case the amount in controversy clearly exceeds $75,000. In addition, it is undisputed that the plaintiff corporation was formed under the laws of New York and that it does not maintain a principal place of business in Florida;[6] in addition, all of the defendants are Florida corporations with their principal places of business located in Destin, Florida.  Accordingly, as the complete diversity of citizenship and jurisdictional amount requirements of § 1332 have been met, diversity jurisdiction exists.

Federal district courts have exclusive original jurisdiction to hear civil cases arising in admiralty.  28 U.S.C.  § 1333.   Two distinct tests have been developed for determining the reach of this jurisdictional grant: a subject matter test for contract claims  and a locality "plus" test for tort claims.  See  Victory Carriers, Inc. v. Law, 404 U.S. 202, 205-06, 92 S.Ct. 418, 421-22, 30 L.Ed.2d 383 (1971); Executive Jet Aviation Inc., v. Cities of Cleveland, Ohio, 409 U.S. 249, 258-61, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972).

When confronting issues of admiralty jurisdiction with respect to contracts, courts must "look to the subject matter of the . . . contract and determine whether the services performed under the contract are maritime in nature."  Exxon Corp. v. Central Gulf Lines, Inc., 500 U.S. 603, 612, 111 S.Ct. 2071, 2077, 114 L.Ed.2d 649 (1991) (citing Kossick v. United Fruit Co., 365 U.S. 731, 735-38, 81 S.Ct. 886, 890-92, 6 L.Ed.2d 56 (1961)).  A

---

[5]  Plaintiff has also made a specific Rule 9(h) election, thus entitling it to "the special benefits afforded to admiralty litigants under the Federal Rules of Civil Procedure and the Supplemental Rules." In re Marmac, LLC, v. Reed, 232 F.R.D. 409, 413 (M.D.Fla. 2005) (quotation omitted); see Fed.R.Civ.P. 14(c), 38(e), 82; Supplemental Rules for Certain Admiralty and Maritime Claims, Rules A-F; 28 U.S.C. § 1292(a)(3).  In addition, although plaintiff does not seek to have the court exercise supplemental jurisdiction, it appears that jurisdiction for Count Two could also rest on 28 U.S.C. § 1367(c).

[6]  Subrogor, the Charmer Corporation, is not named as a plaintiff in this case.  In any event, it is a foreign corporation organized under the laws of the Grand Cayman Islands and does not maintain a principal place of business in Florida.

contract qualifies as "maritime" if its "subject matter is necessary to the operation, navigation or management of a ship." Wilkins v. Commercial Inv. Trust Corp., 153 F.3d 1273, 1276 (11th Cir. 1998).  Contracts for dockage are maritime in nature. See 1 Steven F. Friedell, Benedict on Admiralty §§ 181-191, at 12-1 to 12-55 (7th ed. 1994); Burklow & Associates Inc., v Belcher, 719 So.2d 31, 35 (Fla. 1st DCA 1998).  As plaintiff asserts and defendants necessarily concede, the dock license at issue in this case constitutes a maritime contract.  The court therefore has admiralty jurisdiction to hear plaintiff's breach of contract claim.

Jurisdiction over a tort claim in admiralty exists when the "navigable waters" locality test, supplemented by the "significant relationship to traditional maritime activity" nexus test, is met.  See Executive Jet Aviation Inc., 409 U.S. at 258-61. A party seeking to invoke federal admiralty jurisdiction must satisfy both the locality test and the nexus test.  See Jerome B. Graubert, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 534, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995). Under the locality or "situs" test, the tort is deemed to have occurred "where the alleged negligence took effect," rather than where the negligent act was done. See Executive Jet, 409 U.S.  at 266; Harville v. Johnson Manville Products Corp., 731 F.2d 775, 782 (11th Cir. 1984).  The nexus test involves two queries: (1) did the incident have a "potentially disruptive impact on maritime commerce?" and (2) does a "substantial relationship" exist "between the activity giving rise to the incident and traditional maritime activity?" Sisson v. Ruby, 497 U.S. 358, 364, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990); Doe v. Celebrity Cruises, Inc., 394 F.3d at 900 (citing Jerome B. Grubart, Inc., 513 U.S. at 534).

Plaintiff alleges that as Hurricane Ivan approached landfall along the Alabama/Florida coast defendants contacted plaintiff's insured, Terrell, and informed him that he must remove the Charmer from the marina.  Even if such conduct by defendants, which occurred on land, was a tortious act because it was in contravention of § 327.59, for purposes of the jurisdictional locality test the tort occurred on navigable waters, where the Charmer was exposed to the conditions that resulted in the alleged damage. See Broughton v. Florida International Underwriters, Inc., 139 F.3d 861, 865 (11th Cir. 1998); see also Norfolk Southern Railway Co. v. Kirby, 543 U.S. 14, 25, 125 S.Ct. 385, 394, 160

L.Ed.2d 283 (2004) (stating that in modern maritime commerce "the shore is now an artificial place to draw a line"); cf. Kuehne & Nagel v. Geosource, Inc., 874 F.2d 283 (5ᵗʰ Cir.1989) (holding there was no admiralty jurisdiction over fraudulent inducement claim since tortious misrepresentations "had their desired 'effect' on land when they prompted [plaintiff] to sign the contracts of affreightment."); McAllister Towing & Transportation Company, Inc. v. Thorn's Diesel Service, Inc., 163 F.Supp.2d 1329, 1334 (M.D.Ala. 2001) (similar). Accordingly, the court concludes that the situs requirement in this case has been satisfied. The court likewise concludes that the nexus requirement has been met. The alleged act of requiring the removal of a boat from a marina immediately prior to landfall of a hurricane certainly has the potential to disrupt maritime commerce and the general character of such conduct shows a substantial relationship to traditional maritime activity. See Jerome B. Grubart, Inc., 513 U.S. at 534; Executive Jet Aviation, Inc., 409 U.S. at 253; Broughton, 139 F.3d at 865. The court therefore finds that admiralty jurisdiction pursuant to § 1333 also lies as to plaintiff's negligence per se claim.

"With admiralty jurisdiction comes the application of substantive admiralty law. Absent a relevant statute, the general maritime law, as developed by the judiciary, applies. Drawn from state and federal sources, the general maritime law is an amalgam of traditional common-law rules, modifications of those rules, and newly created rules." East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 862-66, 106 S.Ct. 2295, 2298-99, 90 L.Ed.2d 865 (1986) (citations omitted).  General maritime law is the federal common law that has developed under the admiralty jurisdiction of federal courts. Sander v. Alexander Richardson Investments, 334 F.3d 712, 715 (8ᵗʰ Cir. 2003).  Under federal common law general rules of contract interpretation govern maritime contracts, see United States ex rel. Eastern Gulf, Inc. v. Metzger Towing, Inc., 910 F.2d 775, 779 (11ᵗʰ Cir. 1990); these general rules are "the core principles of the common law of contract that are in force in most states." United States v. National Steel Corp., 75 F.3d 1146, 1150 (7ᵗʰ Cir.1996).  To the extent that it is not inconsistent with admiralty principles, state contract law may be applied to maritime contracts.  See Ham Marine, Inc., v. Dresser Industries, Inc., 72 F.3d 454, 459 (5ᵗʰ Cir. 1995) (citing Koninklyke Nederlandsche Stoomboot Maalschappy, N.V. v. Strachan Shipping Co., 301 F.2d 741, 743 (5ᵗʰ Cir. 1962)).  Similarly,

with respect to a cause of action in tort, the general maritime law "incorporates the general law of torts when not inconsistent with the law of admiralty." Harrison v. Flota Mercante Grancolombiana, S.A., 577 F.2d 968, 977 (5th Cir. 1978).

In this case, it is clear that general maritime law governs plaintiff's claims. The court further concludes that the core principles of Florida contract law which are relevant to this action are not inconsistent with maritime law and therefore may be applied to Count One, plaintiff's breach of contract claim. Although the general law of torts applies to the merits of plaintiff's negligence per se claim,[7] because, as later discussed, the court concludes that no private right of action exists under § 327.59 the application of substantive tort law is unnecessary for the disposition of Count Two.

Count One: Breach of Contract

Under Florida law, the elements of a breach of contract claim are (1) a valid contract, (2) a material breach, and (3) damages.[8]  See J.J. Gumberg Co. v. Janis Services, Inc., 847 So.2d 1048, 1049 (Fla. 4th DCA 2003).  Further, it is well established that a plaintiff must show the defendants' breach was a substantial factor in causing the damage alleged. See A. R. Holland, Inc., v. Wendco Corp., 884 So.2d 1006 (Fla. 1st DCA 2004); Centex-Rooney Construction Co. v. Martin County, 706 So.2d 20 (Fla. 4th DCA 1997).  A plaintiff may only recover if the damages are the proximate result of the material

---

[7] The court notes that plaintiff and defendants agree that plaintiff's claims are governed by maritime law. In addition, in their memoranda the parties generally cite and rely upon Florida law.

[8] In determining whether the breach is material, the court may consider: "(1) the extent to which the injured party will be deprived of the benefit which can reasonably be expected;  (2) the extent to which the injured party can be adequately compensated for the part of the benefit of which she will be deprived;  (3) the extent to which the breaching party will suffer forfeiture;  (4) the likelihood that the breaching party will cure;  and (5) the extent to which the behavior of the breaching party comports with the standards of good faith and fair dealing." Bland v. Freightliner LLC, 206 F.Supp.2d 1202, 1210 (M.D.Fla. 2002) (interpreting Florida law and citing Section 241, Restatement (Second) of Contracts).
With respect to the issue of damages, "Florida follows the general rule that to be recoverable, damages for breach of contract must arise naturally from the breach, or have been in contemplation of both parties at the time they made the contract, as the probable result of a breach " Id. at 1211 (citations and quotation marks omitted).  In addition, "damages are recoverable so long as the actual consequence of breach of contract could have been reasonably expected to flow from the breach." Id.

breach.  See Chipman v. Chonin, 597 So.2d 363, 364 (Fla. 3d DCA 1992) (citation omitted).

In this case, defendants do not dispute the existence of a valid contract for dockage services and they give little attention to the issue of whether a material breach of the agreement occurred.  Rather, defendants focus their argument on the issue of causation; specifically, they contend that the damage to the Charmer was the result of the inexperience and actions/inactions of Terrell, Dacus, and McAfee in mooring the vessel on September 15, 2004; by a force majeure, i. e., Hurricane Ivan; or by both causes.  Viewing the evidence in the light most favorable to plaintiff,  the court concludes that genuine issues of material fact exist which preclude granting summary judgment in defendants' favor on the grounds asserted.  The court finds that the following questions, in light of disputes in the evidence of record, are for the factfinder at trial to decide:

1.      Did defendants materially breach the valid, enforceable terms of the dock license by demanding that Terrell remove the Charmer from the marina prior to landfall of Hurricane Ivan or did Terrell voluntarily remove the vessel?

Defendants assert – and the evidence they have submitted reflects – that they simply requested or "strongly encouraged" Terrell to remove the Charmer from the marina on September 15, 2004, but did not force him to do so.  (Doc. 32 at 9, citing Exh. E at 56; doc. 31 at 9, citing Exhs. F and M).  In opposition, plaintiff has submitted evidence which supports its assertion that defendants did not merely request that Terrell remove the Charmer from the marina voluntarily but rather notified him that, pursuant to the mandatory terms of the dock license, he was required to vacate the boat slip immediately.  (Doc. 38, citing Exh. A at 27).

2.      If defendants materially breached the dock license, was such breach a substantial factor in causing the damage alleged in the complaint or was the damage the result, partly or wholly, of the inexperience and actions/inactions of Terrell, Dacus, and McAfee in mooring the vessel in Destin harbor?

Defendants submit there is no evidence that the Charmer was damaged until nearly forty-three hours after they allegedly breached the dock license. They assert that during this period Terrell had ample time to motor or trailer the vessel to a safer location outside the expected impact zone of Hurricane Ivan but instead he elected to moor the Charmer in Destin harbor, a congested area which was within the projected path of the storm. (Doc. 31 at 10, citing Exh. C at 48-49 and Exh. F at 59). Plaintiff posits, and has submitted evidence in support, that Terrell's decision to anchor the vessel in Destin harbor was reasonable; as acknowledged by defendants' own corporate representative, it in fact was one made by numerous other persons seeking refuge from Hurricane Ivan for their vessels. (Doc. 38 at 10, citing Exh. A at 60; doc. 40, Exhs. C, D, E).  Indeed, plaintiff points out, the defendants' corporate representative characterized Terrell's decision to moor the Charmer in the harbor as a "good" one.  (Doc. 38, citing Exh. A at 103).

In addition, citing the testimony of Terrell, Dacus, and McAfee, defendants submit that these individuals were not sufficiently trained or experienced as seamen to secure the Charmer to ride out safely a storm as severe as Hurricane Ivan and thus were responsible, to some degree, for the vessel's coming loose and being damaged.  (Doc. 31 at 5, citing Exh. C at 3-5, 6, 11; Exh. H at 8, 14; Exh. I at 9, 39).  In response, however, plaintiff's evidence suggests that the three men were competent to perform the job of preparing the Charmer for the storm.   Terrell, a self-taught seaman, had significant prior experience sailing other vessels as well as the Charmer. (Doc. 38 at 10, citing Exh. E at 6, 11; doc. 40).  Dacus also had experience on another boat in addition to the Charmer and was knowledgeable about dropping and securing anchors.  (Id., citing Exh. I at 14, Exh. E at 29). McAfee was qualified to perform all jobs on a boat, had prepared vessels for storms on three prior occasions, possessed thirteen years of professional maritime experience (including working as a boat captain), had extensive amateur boating experience, and had – many years previously – received a certificate in seamanship. (Id., citing exh. E. at 29, Exh. G at 7, 9, 39, 40-2).

Defendants also contend that the equipment used by Terrell, Dacus, and McAfee to secure the Charmer was inadequate for the task and in questionable condition, citing

in support the report of their two expert marine consultants.  (Doc. 31 at 10, citing Exh. G at 21; Exh. M at 6-7).   In opposition, relying upon the report of its own expert marine consultant, plaintiff maintains that the tackle used to anchor the Charmer during Hurricane Ivan was in fully serviceable condition when deployed; further, the tackle remained secure until it was compromised by outside forces, most likely a loose barge, boat, or large debris, which caused the anchor chain to fail after prolonged contact and abrasion.  (Doc. 38 at 15, citing Exh. M; see also doc. 40, Exhs. E, F).

> 3.      If defendants materially breached the dock license, was such breach a substantial factor in causing the degree of damage alleged in the complaint or was Hurricane Ivan the cause of the damage or a substantial factor in causing the damage?

Defendants, citing findings from their expert marine consultants' reports, assert that the location in which Terrell moored the Charmer during the storm experienced winds of hurricane force and a surge of approximately nine feet and thus that Hurricane Ivan should be considered the cause or a substantial factor in causing the damage the vessel sustained.  (Doc. 31, citing Exh. M and Exh. G).   Plaintiff submits that Hurricane Ivan, combined with defendants' act of forcing Terrell to remove the Charmer from the relative safety of the boat slip, resulted in the extent of damage sustained by the vessel.  According to plaintiff's expert marine engineer, the vessel likely would have survived the storm with minimal damage had it remained in its slip at the marina.  (Doc. 40 at 12, citing Exh. B).

In summary, because the court finds that disputed material facts exist with regard to the issues listed above, defendants' motion for summary judgment as to Count One must be denied.

Count Two: Negligence Per Se

The court next addresses plaintiff's claim of negligence per se for violation of Fla. Stat. § 327.59, considering first whether a private cause of action is available under this statute.  As previously stated, the court concludes that it is not.

When a private right of action is not explicit in a statute the court may nevertheless find that the right is implicit. See Welker v. Southern Baptist Hospital of Florida, Inc., 864

So.2d 1178, 1182 (Fla. 1ˢᵗ DCA 2004).  The Florida Supreme Court has held that whether there is civil liability for violation of a statute depends on legislative intent.  See Aramark Uniform and Career Apparel, Inc. v. Easton, 894 So.2d 20, 23 (Fla. 2005); Murthy v. N. Sinha Corp., 644 So.2d 983, 985-86  (Fla. 1994) (stating that "legislative intent . . . should be the primary factor considered by a court in determining whether a cause of action exists when a statute does not expressly provide for one."); Florida Physicians Union v. United Healthcare of Fla., Inc., 837 So.2d 1133, 1137 (Fla. 5ᵗʰ  DCA 2003) (observing that "[t]he courts of this state have long been reluctant to find the legislature intended private parties to have causes of action to enforce statutes . . . without strong indication that was the legislature's intent."). In order to determine legislative intent, courts should primarily look "to the plain meaning of the statute."   Aramark, 895 So.2d at 23. In the absence of evidence "of a legislative intent to create a private cause of action," the violation of a statute creates no civil liability.  Murthy, 644 So.2d at 985.

Chapter 327 is entitled the "Florida Vessel Safety Law." Fla. Stat. § 327.01.  In part Chapter 327 provides for the safety of vessel users and regulates the safe operation of vessels and marinas. Section 327.59 of Chapter 327 prohibits the forced evacuation of vessels from marinas following issuance of a hurricane watch or warning "in order to ensure that protecting the lives and safety of vessel owners is placed before interests of protecting property."  Fla. Stat. § 327.59.  A statute that does not expressly create a right of action, however, "but merely makes provision to secure the safety or welfare of the public as an entity, [generally] will not be construed as establishing a civil liability." Murthy, 644 So.2d at 986 (quoting Moyant v. Beattie, 561 So.2d 1319, 1320 (Fla. 4ᵗʰ DCA 1990); Villazon v. Prudential Health Care Plan, Inc., 843 So.2d 842 (Fla. 2003) (noting that legislature had explicitly created a private right of action for nursing home residents in statute regulating nursing homes and that, absent similar expression of intent in Florida's Health Maintenance Organization Act, no private right of action would be implied in the HMO Act).  In the case at bar, the central concern of § 327.59 – which does not explicitly create a private cause of action – is public safety.  Accordingly, for this reason the court concludes that the statute should not be construed as creating a private right of action.

Plaintiff complains that if the court finds no private right of action under § 327.59 the result is the existence of a wrong without a remedy.  (Doc. 40 at 14).   In Smith v. Piezo Technology & Professional Administrators, 427 So.2d 182 (Fla.1983), the plaintiff, who alleged that she had been discharged in retaliation for pursuing a workers' compensation claim, sought to assert a civil action under Fla. Stat. § 440.205, a provision of the Workers' Compensation Law.  The Florida Supreme Court, recognizing that the statute proscribed certain conduct without establishing a penalty, determined that a private cause of action existed. That holding was based on the proposition that courts are authorized to grant a remedy where the legislature has given a right but "in express terms it has not given a remedy . . . ." Id. at 184 (quotation omitted).  The instant case is different, however.   The legislature did not fail to create a remedy for the violation of § 327.59; rather it provided the criminal penalties set forth in § 327.72.  See Ochab v. Morrison, Inc., 517 So.2d 763, 764 (Fla. 2d DCA 1987) (refusing to create a civil cause of action under § 562.50, noting that "[w]hile the legislature has provided criminal penalties for violation of that statute [prohibiting the sale of alcohol to habitual drunkards after notice], it has not provided civil remedies.  We decline to act where the legislature has chosen not to . . . ."). Given the lack of evidence of legislative intent to create a private right of action pursuant to § 327.59, the court concludes that the violation of the statute creates no civil liability. Murthy, 644 So.2d at 985.

Even assuming, arguendo,  that the court had found an implicit private right of action under § 327.59, it concludes that plaintiff has failed to establish all of the elements necessary to make out a claim of negligence per se for the statute's violation.  In deJesus v. Seaboard Coast Line Railroad Co., 281 So.2d 198 (Fla. 1973), the Florida Supreme Court explained that there are three categories of statutory violations, two of which constitute negligence per se and one which is only evidence of negligence: "(1) violation of a strict liability statute designed to protect a particular class of persons who are unable to protect themselves, constituting negligence per se; (2) violation of a statute establishing a duty to take precautions to protect a particular class of persons from a particular type of injury, also constituting negligence per se;  (3) violation of any other kind of statute,

constituting mere prima facie evidence of negligence." Grand Union Co. v. Rocker, 454 So.2d 14, 15 (Fla. 3d DCA 1984); Newsome v. Haffner, 710 So.2d 184, 186 (Fla. 1st DCA 1998).

At issue in this case is the second type of statutory violation, i. e., a statute which establishes a duty to take precautions to protect a particular class of persons from a particular type of injury.  "The fact of negligence per se resulting from a violation of [this] type of statute does not necessarily mean there is actionable negligence.  It must also be established by a plaintiff that he is of the class the statute was intended to protect, that he suffered injury of the type the statute was designed to prevent, and that the violation of the statute was the proximate cause of his injury." deJesus, 281 So.2d at 201; Walker v. Butler, 461 So.2d 249, 250 (Fla. 1st DCA 1984). Accepting that plaintiff's insured, Terrell, was of the class of persons that § 327.59 was intended to protect,[9] the court concludes that plaintiff cannot show that Terrell suffered the type of injuries the statute was designed to prevent – those pertaining to the lives or safety of vessel owners.  The complaint does not assert, nor has plaintiff come forward with any evidence suggesting, that Terrell suffered any sort of injury whatsoever; indeed, plaintiff alleges simply that Terrell, Dacus, and McAfee removed the Charmer from the marina and moored it in Destin harbor, evidently without incident. The only injury that has been identified is to the Charmer.  Since there is no allegation or evidence that Terrell suffered the type of harm the statute was designed to prevent – rather, to the contrary, it appears he suffered no actual harm at all, either with respect to his life or his safety – plaintiff may not rely on the violation of § 327.59 to establish its claim of negligence per se.

For the reasons given above, defendants are entitled to summary judgment in their favor on Count Two, which shall be dismissed with prejudice.

---

[9] Subrogation rights place a party, such as plaintiff in this case, in the legal position of one who has been paid money because of the acts of a third party. Accordingly, the subrogee "stands in the shoes" of the subrogor and is entitled to all of the rights of its subrogor.  See Klonis v. Armstrong, 436 So.2d 213 (1983) Thus in a subrogation action the subrogee acquires all rights as against the wrongdoer and is thus able to bring an action against that party to recover the monies paid.

As a final matter, although the parties have previously mediated this case without success, the court believes that additional mediation of Count One, plaintiff's breach of contract claim, should be conducted.  Therefore, in compliance with instructions to be set forth by separate order, the parties shall mediate this claim a second time prior to the bench trial.

Accordingly, it is ORDERED:

Defendants' motion for summary judgment (doc. 31) is GRANTED in part and DENIED in part, as follows:

1.      The motion is GRANTED as to Count Two.  Count Two is DISMISSED with prejudice.

2.      The motion is DENIED as to Count One.

3.      The parties shall mediate Count One a second time in compliance with instructions to be set forth by separate order.

**DONE and ORDERED** this 5th day of May, 2006.


s/ *M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**